IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PENSKE LOGISTICS LLC, et al. *

    Plaintiffs, *

v.      *     Civil Action No. RDB-15-3277

FREIGHT DRIVERS AND *
HELPERS LOCAL UNION
NO.557 PENSION FUND, et al. *

    Defendants. *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Penske Logistics LLC and Penske Truck Leasing Co., L.P. (collectively "Penske") filed this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381-1453 ("MPPAA"), seeking to enforce an arbitration award issued on September 30, 2015. (ECF No. 1.) The arbitration concerned disputes between Penske and the Freight Drivers and Helpers Local Union No. 557 Pension Fund (the "Fund") and the Joint Board of Trustees of the Freight Drivers and Helpers Local Union No. 557 Pension Fund (the "Trustees") (collectively, the "Defendants"). (*Id.*) The Fund is an employee pension benefit plan as defined in ERISA §§ 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3), and is also a "trucking industry fund" within the meaning of MPPAA § 4203, 29 U.S.C. § 1383. (ECF No. 1 at ¶ 2.) After years of discovery, five days of hearings and extensive briefing, the Arbitrator ruled that Penske was entitled to a refund of payment plus interest and attorneys' fees. Penske

filed the subject complaint in this Court to enforce this Arbitration Award pursuant to 29 U.S.C. § 1401(b)(2).

This Court ultimately ordered judgment in favor of Penske against the Fund on October 20, 2016. (ECF No. 39.)[1] The Fund appealed, and on January 10, 2018, the United States Court of Appeals for the Fourth Circuit, by an unpublished opinion, vacated and remanded this case to this Court for further proceedings. (ECF No. 41-1.) The Fourth Circuit held that the Arbitrator did not apply the appropriate burden of proof. (*Id.* at 13.) Thereafter, on February 26, 2018, this Court remanded to the Arbitrator to conduct further proceedings consistent with the Fourth Circuit's January 10, 2018 Opinion. (ECF No. 43.)

Consistent with this Court's Order, the Arbitrator completed the proceedings and timely issued the Supplemental Opinion and Award (ECF No. 44-1) (the "Supplemental Award") on June 22, 2019. The Arbitrator reaffirmed its award, and the Supplemental Award once again requires payment to Penske of the same amount as was ordered to be paid by this Court's Supplemental Order and Judgment (ECF No. 39).[2] (*See* ECF No. 44-1.) Penske now moves for summary judgment to affirm and enforce the Arbitrator's award (ECF No. 48), and Defendants cross-move for summary judgment to again vacate the Supplemental Opinion and Award and enter judgment in favor of Defendants (ECF No. 51). This is an action for review on an Administrative Record, which was filed with this Court in 2016. (*See* ECF No. 19.)

For reasons as stated herein, this Court shall GRANT Plaintiffs' Motion for Summary Judgment (ECF No. 48) and shall DENY Freight Drivers and Helpers Local Union No. 557

---

[1] This decision was rendered by the Honorable J. Frederick Motz, and the case was reassigned to the undersigned on January 19, 2018 after Judge Motz's retirement.
[2] The award was paid in full while this case was on appeal. (ECF No. 44.)

Pension Fund and Joint Board of Trustees of the Freight Drivers and Helpers Local Union No. 557 Pension Fund's Cross-Motion for Summary Judgment and Opposition to Plaintiffs'/Counter Defendants' Motion for Summary Judgment (ECF No. 51). This Court once again orders Judgment in favor of Penske.

## BACKGROUND

In brief,[3] this case is focused on a transaction in which Penske sold a subsidiary, Leaseway Transportation Corp. ("Leaseway"),[4] for stock. The Trustees of the Fund issued an assessment of withdrawal liability against Penske to which Penske objected. Under ERISA, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan . . . ." 29 U.S.C. § 1381 (a). A partial withdrawal occurs on the last day of a plan year if there is a 70 percent contribution decline or a partial cessation of the employer's contribution obligation. 29 U.S.C. § 1385 (a).[5]

In the mid-1990s, Penske's core businesses were consumer and commercial truck leasing and rental, as well as logistics. (Arbitrator's Op., ECF No. 1-4 at 88.) In 1995, Penske acquired Leaseway, a successful logistics services business, which brought with it a personnel leasing business and an auto carrier business. (ECF No. 1-4 at 71-72.) Penske quickly took steps to integrate the logistics services and sell the personnel leasing and auto carrier businesses. (ECF No. 1-4 at 71-72.) The personnel leasing business was sold by August 1996 in an asset sale. (ECF No. 1-4 at 72.) Penske also engaged in discussions with prospective

---

[3] A detailed factual overview can be found in the Arbitrator's Opinion, ECF No. 1-4.
[4] At the time, Leaseway was held by LAC Holding Corp. ("LAC"), which was also a wholly-owned subsidiary of Penske.
[5] For further background on withdrawal liability, see Appellate Op., ECF No. 41-1, at 3-6.

3

buyers of the remainder of Leaseway in 1996 and entered into formal negotiations on four occasions between 1996 and 2003 prior to the negotiation with Performance Logistics Group ("PLG") in 2004 that ultimately led to the transaction at issue. (ECF No. 1-4 at 60, 103.)

When Penske purchased Leaseway in 1996, Leaseway was a contributing employer to the Fund. (ECF No. 1-4 at 2.) Leaseway became a wholly-owned subsidiary of Penske Truck Leasing Co., L.P. and a member of the "controlled group" as that term is described in ERISA § 4001(b)(1). (ECF No. 1-4 at 2.) In June 2001, the ownership of Leaseway was transferred to LAC Holding Corp. ("LAC"), which was also a wholly-owned subsidiary of Penske. (ECF No. 1-4 at 2.) As a result, Leaseway became a wholly-owned subsidiary of LAC, but the transfer did not change the controlled group status. (ECF No. 1-4 at 2.) On March 26, 2004, Penske entered into a purchase and sale agreement (the "Transaction") with Performance Transportation, which was a wholly-owned subsidiary of PLG. (ECF No. 1-4 at 2.) The Transaction provided, among other things, for Penske to receive a $25 million secured note and 43.5% of PLG's stock.[6] (ECF No. 1-4 at 2, 46.) Penske asserts that, after the Transaction, it was no longer a member of the same controlled group as Leaseway, having sold its controlling interest. (ECF No. 1-4 at 2.) Penske also asserts that market data at that time gave it reason to be optimistic that its equity stake in PLG would be valuable, and it expected to be able to convert to cash within the three- to five-year period following the Transaction. (ECF

---

[6] Penske provided Fund counsel redacted copies of the Stock Purchase Agreement and a Statement of Business Affairs. (ECF No. 1-4 at 2-3.) By letter dated July 20, 2004, the Fund advised PLG that it appeared, based upon the information provided, that the Transaction was a stock sale, which meant that no withdrawal liability was due since Leaseway would continue to make and be obligated to make contributions to the Fund on behalf of members of the bargaining unit after the Transaction. (ECF No. 1-4 at 3.)

No. 1-4 at 74, 107.) Within ten months, the $25 million secured note was converted to cash. (ECF No. 1-4 at 64.)

In December 2004, the Fund Trustees authorized the filing of a civil action against Leaseway for contributions due to the Fund based upon a payroll audit. (ECF No. 1-4 at 5.) Leaseway denied that it owed any audit deficiencies, and ultimately, the Fund agreed to accept a lump sum settlement payment. (ECF No. 1-4 at 6-7.) The Record reflects that in November 2005, a partial withdrawal liability had been calculated for Leaseway as of December 31, 2004, and it was expected that there would be a further liability in 2005. (ECF No. 1-4 at 9-10.)

Effective January 25, 2006, PLG, along with various affiliates including LAC, filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York. (ECF No. 1-4 at 4.) In March 2006, the Fund sent notices for the First Partial Withdrawal Liability ("First PWL") of $3,901,840 to both Leaseway and Penske, noting the bankruptcy petition. (ECF No. 1-4 at 11.) Penske filed a Request for Review on May 30, 2006, asserting, among other things, that Leaseway was not a member of the same controlled group at the time of the alleged partial withdrawal. (ECF No. 1-4 at 12.) The Fund issued its Response on October 2, 2006 noting that it had not yet had an opportunity to review the substantive information about the Transaction but declined to withdraw the assessment. (ECF No. 1-4 at 12.) Penske paid the First PWL and pursued litigation, which was stayed pending arbitration to resolve the dispute.[7] (ECF No. 1-4 at 15-17, 30.)

---

[7] "MPPAA requires arbitration in the first instance for *any dispute* concerning a determination of withdrawal liability, whether the dispute is about a legal or factual matter, and then affords judicial review of

5

The Record reflects that in May 2007, updated in August 2007, the Fund calculated a Second Partial Withdrawal Liability ("Second PWL") for Leaseway—$5,136,920 as of December 31, 2005. (ECF No. 1-4 at 18-19.) On October 1, 2007, the Fund notified Penske about the Second PWL and asserted that Penske was liable but provided no explanation. (ECF No. 1-4 at 19.) Penske filed a Request for Review of the Second PWL in October 2007, and on November 9, 2007, the Fund cancelled and rescinded the assessment. (ECF No. 1-4 at 19.)

Leaseway emerged from bankruptcy as Leaseway LLC, but on November 19, 2007, it and various other affiliated reorganized debtors, again filed for relief under Chapter 11 of the United States Bankruptcy Code. (ECF No. 1-4 at 4.) These cases were converted to Chapter 7 of the Bankruptcy Code on July 14, 2008. (ECF No. 1-4 at 4-5.)

The Fund issued a second Second PWL on November 30, 2010 asserting that Leaseway was a member of the Penske controlled group.[8] (ECF No. 1-4 at 19-20.) Penske filed a detailed Request for Review in February 2011, which was responded to by the Fund on June 23, 2011 denying all of Penske's claims. (ECF No. 1-4 at 20-21.) In December 2011, the Parties agreed to consolidate the active arbitrations into a single proceeding. (ECF No. 1-4 at 30.)

After discovery, hearings were held from March 31 to April 4, 2014, the parties filed post-hearing briefs[9] in June 2014, and the Arbitrator issued a 123-page opinion and award on

---

the arbitration award in a federal court." *Bd. of Trs., Sheet Metal Workers' Nat. Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 374 (4th Cir. 2006).
[8] On the same date, the Fund also issued an assessment of Complete Withdrawal Liability, which was addressed in a separate ruling and appeal. (ECF No. 1-4 at 24.)
[9] Simultaneous briefs followed by simultaneous replies.

September 30, 2015. (ECF No. 1-4.) The Arbitrator found that Penske was not part of the same controlled group as Leaseway at the time the partial withdrawals occurred, so the First PWL and Second PWL were issued in violation of the MPPAA. (ECF No. 1-4 at 123.) The Arbitrator found that the "clear preponderance of the record evidence failed to establish that the Transaction was undertaken by Penske with a principal purpose of evading or avoiding withdrawal liability to the Fund or to other multiemployer pension funds to whom Leaseway was a participating employer." (ECF No. 1-4 at 102.) As a result, the Fund could not ignore the Transaction to hold Penske liable as part of the same controlled group. (*Id.* citing ERISA § 4212(c), 29 U.S.C. § 1392(c)). The Arbitrator ruled that the Fund must refund Penske's withdrawal liability payments, amounting to $9,586,345.39, plus interest, and that Penske was entitled to an award of certain attorneys' fees due to the Fund's discovery abuse. (ECF No. 1-4 at 121, 123.)

On October 27, 2015, Penske filed this case to enforce the award (ECF No. 1), which was ultimately granted (ECF Nos. 35, 39), appealed, vacated and remanded to this Court (ECF No. 41-1), and remanded back to the Arbitrator on February 26, 2018 (ECF No. 43). The Court of Appeals for the Fourth Circuit vacated and remanded this case due to concerns that certain references in the September 30, 2015 opinion and award suggested that an incorrect burden of proof and persuasion may have been applied by the Arbitrator when determining that Penske did not enter into the Transaction with a principal purpose of evading or avoiding withdrawal liability.

The Arbitrator's most recent 22-page Supplemental Opinion and Award (ECF No. 44-1) was issued on June 22, 2018, finding:

7

> A preponderance of the record evidence established that the Fund improperly treated the March 26, 2004 purchase and sale agreement, whereby Penske Truck Leasing Co., LP ("Penske") sold all of the stock of LAC Holding Corp. to Performance Transportation ("Transaction"), as an ERISA Section 4212(c) transaction. The Employer proved, by a preponderance of the record evidence, that the evasion or avoidance of withdrawal liability was not a principal purpose of the Transaction.

(ECF No. 44-1 at 22.) The Arbitrator again directed the Fund to refund payments to Penske, including interest and attorneys' fees. (*Id.*) Penske is now back before this Court requesting enforcement of the award and the Fund is requesting that the award be vacated. For reasons as stated herein, this Court shall GRANT Penske's motion to enforce the award and DENY the Fund's cross-motion to vacate the award.

## STANDARD OF REVIEW

Unlike arbitrations generally, when considering an arbitrator's award issued under the Multiemployer Pension Plan Amendments Act ("MPPAA"), this Court reviews findings of fact for clear error and conclusions of law *de novo*. *Penske Logistics LLC v. Freight Drivers and Helpers Local Union No. 557 Pension Fund*, 721 F. App'x 240, 244 (4th Cir. 2018) (citing 29 U.S.C. § 1401(c); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 375 (4th Cir. 2006)); *see also Freight Drivers and Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 216 (4th Cir. 2015) (noting that § 1401(c) creates a presumption of correctness of the arbitrator's findings of fact, but the arbitrator's legal conclusions are subject to *de novo* judicial review). Clear error requires "a definite and firm conviction that a mistake has been committed." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 F. App'x 400, 401 (4th Cir. 2018) (quoting *Sky Angel U.S., LLC v. Discovery*

8

*Commc'ns, LLC*, 885 F.3d 271, 279 (4th Cir. 2018)). The same clear-error standard generally applies to the arbitrator's application of law to facts. *See Cent. States, Se. & Sw. Areas Pension Fund v. Nitehawk Exp., Inc.*, 223 F.3d 483, 488 (7th Cir. 2000) (recognizing that mixed questions of law and fact are reviewed for clear error); *but see Boone v. United States*, 944 F.2d 1489, 1492 (9th Cir. 1991) (noting that if a court must assess whether legal duties arise under a given set of facts, the review should be *de novo*, but if the inquiry is essentially factual, the review is for clear error).

This Court will examine the parties' respective arguments through the lens of Rule 56 of the Federal Rules of Civil Procedure, which provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)).

## DISCUSSION

This Court has reviewed the Arbitrator's Opinion and Award (ECF No. 1-4), Supplemental Opinion and Award (ECF No. 44-1), and the Administrative Record, which includes the Arbitrator's hearings' transcripts, post-hearing briefs, and the evidence admitted into the record. This Court begins with the presumption that the Arbitrator's findings of fact are correct. 29 U.S.C. § 1401 (c). On remand, the Arbitrator reconsidered whether Penske

proved by a preponderance of the record evidence that the Fund had made an incorrect determination that a principal purpose of the Transaction was to evade or avoid withdrawal liability. On *de novo* review of the record,[10] this Court finds that the Arbitrator used the correct standard of proof, i.e., that Penske, as the employer, had "the burden . . . to disprove [the] challenged factual determination by a preponderance." *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 629 (1993).

As the party with the burden, Penske was first to present its case to the Arbitrator. (Tr., Mar. 31, 2014 at 6; Suppl. Op., ECF No. 44-1 at 5.) As noted by the Arbitrator in the both opinions, the record evidence was "so overwhelming establishing that the evasion or avoidance of withdrawal liability was not a principal purpose of the Transaction that the record 'raise[d] serious doubts as to the good faith behavior on the part of the Trustees in initially assessing Penske with withdrawal liability . . . .'" (ECF No. 44-1 quoting ECF No. 1-4 at 117.) The Arbitrator also found that "[t]he overwhelming weight of record evidence established that Penske was motivated to enter into the Transaction by legitimate business reasons wholly unrelated to considerations of withdrawal liability." (ECF No. 44-1 at 6.)

The Fund and Trustees spend many pages arguing their version of the facts, and why they support a different conclusion. However, it is not for this Court to reverse the Arbitrator's factual findings even if it would have weighed the evidence differently. *See United States v. Almendarez*, 699 F. App'x 278, 279 (4th Cir. 2017) (citing *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012)). On review of the factual findings made by the Arbitrator, even in

---

[10] The arbitrator's application of the appropriate burden of evidence is a question of law, which is reviewed *de novo*. *Sherwin-Williams Co. v. New York State Teamsters Conference Pension, Ret. Fund*, 158 F.3d 387, 393 (6th Cir. 1998).

light of the underlying presumption that the Fund's determination was correct, this Court can simply not conclude that the Arbitrator made a mistake. Indeed, this Court concurs with the Arbitrator's analysis. There is simply no clear error on the part of the Arbitrator.

The Fund and Trustees argue that the Arbitrator was required by the remand order to perform an extensive review and ignored that order. (ECF No. 51-1 at 2-3.) They also argue that the Arbitrator failed to acknowledge the error in the burden of proof applied in the 2015 opinion. (*Id.* at 4.) However, the Arbitrator carefully explained in the Supplemental Opinion and Award that the findings and conclusions in the 2015 opinion had been made "with an appropriate understanding and appreciation of the Section 4221 presumptions of correctness and the Employer's burden of proof in this case." (ECF No. 41-1 at 4.) The Arbitrator then summarized the evidence that was sufficient, by a preponderance of the evidence, to disprove the Fund's determination that the Transaction had been entered into with a principal purpose to avoid withdrawal liability. (ECF No. 44-1 at 7-16.) The Fund and Trustees would have the Arbitrator write a much more detailed opinion, but the Arbitrator's Supplemental Opinion and Award "states the basis for the award" and complies with the requirements for a written award. 29 C.F.R. § 4221.8.

The Fund and Trustees also assert that the Arbitrator ignored the evidence they provided and credited witness testimony while ignoring objective evidence undermining it. (ECF No. 51-1 at 8-9.) As noted by the United States Supreme Court, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding

11

of and belief in what is said." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (citation omitted). In this case, the Arbitrator served as the trier of fact, and this Court finds no evidence that the Arbitrator ignored or failed to consider material evidence in making factual findings. Specifically, the Arbitrator found Penske's fact witness, Mr. Angelbeck,[11] credible (ECF No. 44-1 at 7-9) but did not find the Fund's expert witness credible (ECF No. 44-1 at 10-11). The Arbitrator found that Mr. Angelbeck testified credibly as to the motivations of Penske in entering into the Transaction, and his testimony was supported by record evidence. (ECF No. 1-4 at 102.) Although the Fund and Trustees may disagree with the Arbitrator's findings or how he weighed the evidence, there is absolutely no basis for this Court to reverse the Arbitrator's credibility determinations.

Further, with regard to the sanction award and interest calculations, the Arbitrator did not err by agreeing with this Court on the attorneys' fees and applicable interest rates calculated pursuant to the provisions of 29 C.F.R. §§ 4219.32. The Arbitrator awarded attorneys' fees due to the Fund's discovery misconduct pursuant to 29 C.F.R. § 4221.10. "The only requirement from the text of § 4221.10 is that the fees be reasonable . . . ." (ECF No. 41-1 at 20, Diaz, J. dissenting.) This Court found the fees reasonable in its prior review (ECF No. 29) and sees no reason to disturb that finding now.

Accordingly, this Court shall once again AFFIRM the Arbitrator's award in its entirety.[12]

---

[11]  Penske's Vice-President of Business Development. (ECF No. 1-4 at 45.)
[12]  This Court notes that there is a typographical error in the Arbitrator's June 22, 2018 Supplemental Opinion and Award. (ECF No. 44-1 at 22.) The amount of the Award is stated as $9,596,345.39 but should be $9,586,345.39. (*Id.*)

## CONCLUSION

For the reasons stated above:

1. The Arbitrator's September 30, 2015 Award as supplemented by the Arbitrator's June 22, 2018 Award is AFFIRMED.

2. Plaintiffs' Motion for Summary Judgment (ECF No. 48) is GRANTED.

3. Freight Drivers and Helpers Local Union No. 557 Pension Fund and Joint Board of Trustees of the Freight Drivers and Helpers Local Union No. 557 Pension Fund's Cross-Motion for Summary Judgment and Opposition to Plaintiffs'/Counter Defendants' Motion for Summary Judgment (ECF No. 51) is DENIED.

4. Judgment shall be entered in favor of Penske Logistics LLC and Penske Truck Leasing Co., L.P., and against Freight Drivers and Helpers Local Union No. 557 Pension Fund and Joint Board of Trustees of the Freight Drivers and Helpers Local Union No. 557 Pension Fund, in the principal amount of $9,586,345.39, together with interest on those payments, calculated pursuant to the provisions of 29 C.F.R. §§ 4219.31(d) and 4219.32, together with $44,302.00 in reasonable attorneys' fees incurred in connection with certain depositions during the Arbitration.

A separate order follows.

Dated: March 6, 2019.

/s/ Richard D. Bennett

Richard D. Bennett
United States District Judge